**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

NEFTALI PEREZ,

                                    Petitioner,                  DECISION & ORDER

                -vs-
                                                                14-CV-06223

CHRISTOPHER MILLER, SUPERINTENDENT
GREAT MEADOW CORRECTIONAL FACILITY,

                                    Respondent.

**APPEARANCES**

For Petitioner:                        Neftali Perez, *pro se*
                                           80 A 2470
                                           Great Meadow Correctional Facility
                                           Box 51
                                           Comstock, NY 12821-0051

For Defendant:                       Paul Lyons, A.A.G.
                                           Office of New York State Attorney General
                                           120 Broadway
                                           New York, NY 10271
                                           (212) 416-8229

**INTRODUCTION**

    **Siragusa, J.** Before the Court is Petitioner Neftali Perez's ("Petitioner") application for appointment of counsel pursuant to 28 U.S.C. § 1915(d) to provide legal assistance in pursuing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] For the reasons stated below the application is denied with prejudice.

**BACKGROUND**

    In order to determine whether the Court should "request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915 (1996), "the Court must decide

---

[1] Petitioner erroneously cites to 18 U.S.C. § 3006(g). Since this is not a criminal proceeding, that statute is inapplicable here.

whether, 'from the face of the pleadings,' the claims asserted by the plaintiff 'may have merit,' or the plaintiff 'appears to have some chance of success.'" *Martinson v. U.S. Parole Comm'n.*, No. 02CIV.4913 (DLC)(DF), 2004 WL 203005, at *2 (S.D.N.Y. Feb. 2, 2004) (quoting *Stewart v. McMikens,* 677 F. Supp. 226, 228 (S.D.N.Y.1988), and *Baskerville v. Goord*, No. 97 Civ. 6413(BSJ) (KNF), 2001 WL 527479, at *1 (S.D.N.Y. May 16, 2001)).[2] Therefore, the Court takes the following facts from the petition, and the answer, solely for the purpose of determining whether Petitioner's claims may have merit, or he appears to have some chance of success. Respondent notes that the original state criminal charge and subsequent conviction resulted from an event,

> [o]n April 23, 2010, at Elmira Correctional Facility, petitioner and another inmate, Ariel Echevarria-Perez, entered into a dispute after Echevarria-Perez "disrespected" petitioner. Echeverria-Perez was the initial aggressor, attacking petitioner with a "shank" – a 9-1/2 inch sharpened metal object…petitioner assaulted Echeverria-Perez with the same shank, slashing and stabbing him about the head and body, causing a stab wound to his right chest and multiple deep lacerations on his head and left wrist, including transections of the left radial and ulnar arteries.

Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus at 1, Oct. 8, 2014, ECF No. 7.

On May 27, 2010, Petitioner was charged with: Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110.00/125.25(1)); Assault in the First Degree (N.Y. Penal Law § 120.10(1)); Assault in the Second Degree (N.Y. Penal Law § 120.05(7)); and three counts of Promoting Prison Contraband in the First Degree (N.Y. Penal Law § 205.25(2)). State Court Record 66–68, Oct. 8, 2014, ECF No. 8-1 (Indictment No. 2010-129).

---

[2] Pleadings are defined in Fed. R. Civ. P. 7(a) to include a complaint and an answer, which the Court interprets her to include the petition and answer with its attached state record.

In a letter dated August 26, 2010, addressed to the state judge, Petitioner's former counsel stated that he "[spoke] at length with [petitioner], and he wishes to accept the plea bargain offer." State Court Record 117–18. Counsel's letter also "advise[d] the Court and the People of what [counsel] expect[ed] to be the general substance of [petitioner's] allocution in advance of the plea," writing:

> The alleged victim ("Echeverria") was the initial aggressor, attacking [petitioner] with a sharpened metal object. [Petitioner] was, at first, acting in self-defense. There came a point, however, that [petitioner] was able to take the metal object away from Echeverria, and had injured and subdued him to the extent that he no longer posed a threat. At that point, [petitioner] engaged in a new assault, using the deadly weapon/dangerous instrument with the intent to cause serious physical injury to Mr. Echeverria. Having successfully defended himself, this later assault was intended to send a message to other inmates.

State Court Record 117.

Petitioner appeared before Chemung County Court Judge James T. Hayden on August 27, 2010, with counsel to accept a plea that offered a maximum of 15 years and 5 years of post-release supervision. State Court Record 11–12. The judge asked Petitioner the following questions, to which he gave the following answers:

> THE COURT: By pleading guilty, you would be giving up that right [against self-incrimination], because one of the things I'm going to ask you to do is to tell me what you did.
>
> THE DEFENDANT: I understand.
>
> THE COURT: Understand? Knowing that, do you still wish to plead guilty?
>
> THE DEFENDANT: Yes, guilty with an explanation.
>
> THE COURT: Just a minute. Is there anything at this point in the process you do not understand?
>
> THE DEFENDANT: Yes, I am understanding, you're translating for me in Spanish.
>
> THE COURT: Do you need to ask your lawyer any additional questions?
>
> THE DEFENDANT: No. He knows what he has to do, I've explained it to him.

THE COURT: The Court is satisfied defendant is knowingly, voluntarily, and intelligently offering the plea, we will entertain it.

What is it you did back on April 23rd, 2010, in the County of Chemung, that causes you to want to plead guilty?

THE DEFENDANT: I was coming out of my work, I went to my cell, and I came out to get a cup of coffee. But the other individual came out of his cell to go to work, but he attacks me with a knife, wounding me here in my hands. And so, I came and I took it away from him. And the circumstances are, that led me to then attack him, because he had attacked me first.

And I told the superintendent when I had my hearing that I was going to declare myself guilty, because I did it, but I took the knife away from him. The knife was his, and I attacked him with it.

The superintendent said I was right, that I had done it in self-defense. So then he gave me two years for the knife. He gave me two and a half years in the box.

THE COURT: After you took the knife from the other man, what did you do with the knife?

THE DEFENDANT: I attacked him, because he attacked me. That's what I said.

THE COURT: Where did – did you strike him with the knife?

THE DEFENDANT: And when the guards came, and they told me to let him go. I dropped it on the floor, the knife on the floor, because the guards hadn't been there, they didn't see it when he attacked me.

THE COURT: That was not my question. Did you strike the other person with the knife?

THE DEFENDANT: With the same knife, his knife.

THE COURT: Where did you strike him?

THE DEFENDANT: Up here, (indicating), around the neck.

THE COURT: And when you struck him with the knife, did you cut him?

THE DEFENDANT: Yes, I did, I cut him.

THE COURT: And is it your understanding that he was badly wounded?

THE DEFENDANT: Well, according to what they said in the hospital, he was bad. But I don't know, I haven't seen him anymore.

THE COURT: At the time you struck him with the knife, did he have any kind of weapon in his hands?

THE DEFENDANT: No, he didn't. He was trying to get me, but I was getting him. He was punching at me, and I hit him with the knife.

> THE COURT: Has your lawyer explained to you that you have the right to raise a claim of self-defense at trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you telling me that you would rather take advantage of the plea bargain than risk going to trial?
>
> THE DEFENDANT: I am guilty, because I did hit him with the knife, I did stab him with the knife.
>
> THE COURT: That wasn't my question. Are you telling me that you would rather take advantage of the plea bargain offered to you than risk going to trial?
>
> THE DEFENDANT: Exactly.
>
> THE COURT: All right. The Court is satisfied defendant has offered sufficient factors to justify the plea, and the Court is also satisfied that he has discussed the Case option of raising a claim of self-defense at trial, and that he is choosing not to take that option.

State Court Record 14–18.

After entering the plea, Petitioner appealed to the Appellate Division, Third Department. Petitioner claimed: the trial court erred in accepting his guilty plea because Petitioner continued to assert self-defense, and that Petitioner's trial counsel was ineffective for advising him to plead guilty when he maintained self-defense. State Court Record 26–60. The Appellate Division, Third Department affirmed the plea agreement, writing:

> Initially, inasmuch as the record before us does not indicate that defendant moved to withdraw his plea or sought to vacate the judgment of conviction, "he has failed to preserve his challenge to the sufficiency of the plea allocution premised on County Court's alleged failure to make an adequate inquiry concerning his claim of self-defense" (*People v. Simpson,* 19 A.D.3d 945, 945, 797 N.Y.S.2d 322 [2005]; see *People v. Richardson*, 275 A.D.2d 864, 865, 714 N.Y.S.2d 140 [2000], *lv. denied* 95 N.Y.2d 937, 721 N.Y.S.2d 614, 744 N.E.2d 150 [2000]) and his claim that he was denied the effective assistance of counsel (*see People v. Gomez,* 72 A.D.3d 1337, 1337, 899 N.Y.S.2d 435 [2010]). Moreover, the narrow exception to the preservation requirement is not applicable here because, even assuming that defendant's remarks raised a legitimate claim of self-defense, the court satisfied its duty of further inquiry (*see People v. Lopez,* 71 N.Y.2d 662, 666, 529 N.Y.S.2d 465, 525 N.E.2d 5 [1988]; *People v. Simpson*, 19

> A.D.3d at 945, 797 N.Y.S.2d 322 [2005]; *People v. Moore*, 270 A.D.2d 715, 716, 705 N.Y.S.2d 425 [2000], *lv. denied* 95 N.Y.2d 800, 711 N.Y.S.2d 168, 733 N.E.2d 240 [2000]). The court specifically questioned defendant about his right to raise the claim of self-defense and confirmed that defendant had already discussed a possible claim of self-defense with his counsel. The record amply supports the conclusion that defendant fully understood the nature of the charge and waived any claim of self-defense in exchange for the favorable plea agreement (*see People v. Rush*, 79 A.D.3d 1522, 1523, 914 N.Y.S.2d 349 [2010], *lv. denied* 16 N.Y.3d 836, 921 N.Y.S.2d 200, 946 N.E.2d 188 [2011]). Accordingly, defendant has presented no basis for reversal herein.

*People v. Perez*, 101 A.D.3d 1162, 955 N.Y.S.2d 435, 2012 N.Y. Slip Op. 08355 (N.Y. App. Div. 3rd Dep't 2012). Petitioner then filed an application for leave to appeal to New York Court of Appeals, raising the same issues. State Court Record 170–73. On February 6, 2013, the Appellate Division issued an order denying leave to appeal to the Court of Appeals. State Court Record 177–78. Petitioner has not filed any state collateral proceedings. Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ¶ 11, May 2, 2014, ECF No. 1.

## STANDARD OF LAW

The Court has a limited degree of discretion when deciding if an indigent individual should receive appointed legal counsel. *Hodge v Police Officers*, 802 F.2d 58 (2d Cir. 1986), provides the requirements that must be met for counsel to be appointed to a civil litigant:

> Clear legal principles in this circuit governing § 1915(d) appointment of counsel are few. Of course, the statute must be understood to guarantee indigents "meaningful access" to the courts as required by the Constitution, *Bounds v. Smith*, 430 U.S. 817, 823, 97 S. Ct. 1491, 1495, 52 L.Ed.2d 72 (1977), but no court has yet held "meaningful access" to mean that indigents must always be supplied with counsel in civil as well as criminal cases. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). In this circuit, *Miller v. Pleasure* held that where "the plaintiff's claims are so highly dubious that a judge cannot properly ask a member of the bar to assume this thankless burden," appointment of counsel is properly denied. 296 F.2d at 285. In habeas corpus cases, counsel must be appointed for qualified indigents when a hearing is required; the court may appoint

- 6 -

counsel at an earlier stage if it deems appointment desirable. Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(c) and Advisory Committee Notes.

*Hodge*, 802 F.2d at 60. As the district court observed in *Martinson v. United States Parole Comm'n*, No. No. 02CIV.4913 (DLC)(DF), 2004 WL 203005, at *2 (S.D.N.Y. Feb. 2, 2004):

> The governing rules require the appointment of counsel only when an evidentiary hearing is needed. Rule 8(c) of the Rules Governing § 2254 Cases. The appointment of counsel in all other cases is discretionary. *See id.; Peralta v. Bennett,* No. 01 Civ. 8049(SHS) (DF), 2002 WL 334513, at *1 (S.D.N.Y. Mar. 1, 2002); *see also Jackson v. Moscicki,* Nos. 99 Civ. 2427(JGK), 99 Civ. 9746(JGK), 2000 WL 511642, at *4 (S.D.N.Y. Apr. 27, 2000).

Another important criterion a court must consider is the merit of a claim; frivolous claims that will not be successful do not require assignment of legal counsel. Moreover,

> As a threshold matter, the Seventh Circuit explained, the district court must consider the merits of the indigent's claim. "Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." 650 F.2d at 887 (citing *Miller*, 296 F.2d 283). As indicated above, this is already part of the law in this circuit, and it is a requirement that must be taken seriously. If mere bald assertions by an indigent, which technically put a fact in issue and suffice to avert summary judgment, required appointment of an attorney under § 1915(d), the demand for such representation could be overwhelming. If, however, the indigent appears to have some chance of success, the *Maclin* [*v. Freake*, 650 F.2d 885 (7th Cir. 1981) (per curiam)] case cites other factors the trial judge should consider.

*Id.*

## ANALYSIS

Respondent's counsel's argument that Petitioner is procedurally barred from obtaining a writ of habeas corpus from the Court is well taken. It appears from the pleadings that Petitioner had an independent and adequate state procedure he needed to use in order to preserve his challenge to the sufficiency of plea allocution by either moving the state trial court to vacate the judgment or enter a different plea. Further, Peti-

tioner it appears so far that Petitioner may have failed to,

> preserve his challenge to the sufficiency of the plea allocution premised on County Court's alleged failure to make an adequate inquiry concerning his claim of self-defense (*People v. Simpson*, 19 A.D.3d 945, 945, 797 N.Y.S.2d 322 [2005]; see *People v. Richardson*, 275 A.D.2d 864, 865, 714 N.Y.S.2d 140 [2000], *lv. denied* 95 N.Y.2d 937, 721 N.Y.S.2d 614, 744 N.E.2d 150 [2000]) and his claim that he was denied the effective assistance of counsel (see *People v. Gomez*, 72 A.D.3d 1337, 1337, 899 N.Y.S.2d 435 [2010]).

*People v. Perez*, 101 A.D.3d 1162, 1162 (N.Y. App. Div. 3d Dep't 2012). This procedure is the "sort of firmly established and regularly followed state practice that can prevent implementation of federal constitutional rights," *James v. Kentucky*, 466 U.S. 341, 348–49 (1984), because it meets the requirements set forth in *Cotto v. Herbert*, 331 F.3d 217 (2d Cir. 2003). *Cotto* sets forth three important guidelines that must be considered when examining the legitimacy of a procedural default: (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Id.* at 240.

Applying the three *Cotto* factors, the Court notes first that the trial judge in taking the plea specifically raised the issue of self defense with Petitioner. Although Petitioner in his petition suggests his self-defense was ignored ("THE COURT ERRED IN ACCEPTING DEFENDANT'S PLEA WHEN DEFENDANT CONTINUED TO ASSERT SELF DEFENSE"), Pet. ¶ 10(f), the transcript of his plea proceeding, partially quoted above starting at 3, belies any assertion that Petitioner insisted in raising a claim of self-

defense at his plea colloquy. Thus, Petitioner's plea never "was 'actually relied on' by the trial court in the sense that the trial court never was given occasion to consider—and conceivably cure by granting his motion to withdraw his plea—the alleged insufficiency." *Brea v. New York City Probation Dept.*, No. 03 Civ. 4822, 2004 WL 389011, at *7 (S.D.N.Y. Mar. 3, 2004).

Regarding the second *Cotto* factor, ample case law exists that requires Petitioner to preserve his challenge to the involuntariness of his plea prior to moving to appeal. *See*, *e.g.*, *People v. Clarke*, 93 N.Y.2d 904, 906 (1999) ("this case does not qualify for the narrow, rare exception to the requirement that the claim of an invalid guilty plea must be appropriately preserved"); *People v. Lopez*, 71 N.Y.2d 662, 665–66 (1988) ("in order to preserve a challenge to the factual sufficiency of a plea allocution there must have been a motion to withdraw the plea under CPL 220.60 (3) or a motion to vacate the judgment of conviction under CPL 440.10"); *People v. Claudio*, 64 N.Y.2d 858, 858–59 (1985) ("the argument that defendant's guilty plea should not have been accepted is also not preserved for appellate review because defendant neither moved to withdraw the plea before sentencing nor raised the issue by a motion to vacate the judgment of conviction"); *People v. Hilliard*, 39 A.D.3d 1021, 1022 (N.Y. App. Div. 3d Dep't 2007) ("defendant's assertion that his guilty plea was involuntarily entered is unpreserved for our review in light of his failure to move to withdraw the plea or vacate the judgment of conviction"); *People v. Peterson*, 35 A.D.3d 1195, 1196 (N.Y. App. Div. 4th Dep't 2006) ("by failing to move to withdraw his plea or to vacate the judgment, defendant failed to preserve [his contention that his plea was not knowingly, voluntarily or intelligently entered] for our review"). The same procedural ground that requires Petitioner to preserve

his challenge to his plea has been used in New York courts, "'[t]o the extent that a claim of ineffective assistance of counsel impacts on the voluntariness of a defendant's guilty plea, . . . the claim must ordinarily be preserved by a motion to withdraw the plea or a motion to vacate the judgment of conviction.'" *People v. Dickson*, 292 A.D.2d 643, 644 (3d Dep't 2002) (citation omitted); *accord, e.g., People v. Doe*, 95 A.D.3d 1449, 1449 (3d Dep't 2012); *People v. Campbell*, 89 A.D.3d 1279, 1279 (3d Dep't 2011); *People v. Ross*, 41 A.D.3d 870, 870 (2d Dep't 2007); *People v. Grant*, 294 A.D.2d 671, 672 (3d Dep't 2002); *People v. Johnson*, 288 A.D.2d 501, 502 (3d Dep't 2001). The Court agrees with the state court

The third *Cotto* guideline is met because Petitioner never complied with procedural rule. He did not withdraw his plea or move to vacate the judgment before direct appeal. "By definition, total noncompliance cannot also be 'substantial compliance.'" *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008).

After meeting all three *Cotto* guidelines, the Court finds that the procedural bar is legitimate. However, a court may nonetheless review a claim that is procedurally barred if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v Thompson*, 501 U.S. 722, 750 (1991). As the Court will examine below, Petitioner's claims appear to lack merit.

Even though Petitioner's claims appear to be frivolous due to a procedural bar, the Court will also examine the merits of his Petition to determine if a miscarriage of justice would occur by not considering the claims. Prior to examining the merits, the issues raised by Petitioner must meet the exhaustion rule requirement.

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (*per curiam*) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Duncan, supra*, at 365–366, 115 S. Ct. 887; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Petitioner has raised two claims in his petition: one for ineffective assistance of counsel, and the other for an involuntary plea. The Court finds that the Petitioner did not exhaust all state remedies pertaining to his ineffective assistance of counsel claims because he did not indicate the potential federal claim on any of his state papers, thus precluding him from raising this issue before the Court. Although the Court agrees that Petitioner's involuntary plea claim is exhausted, it does not survive the requirements set forth in *Hill v. Lockhart*, 474 U.S. 52 (1985): "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)) (other citations omitted).

Petitioner admitted under oath that he was guilty, and provided an explanation of his actions. He went far beyond self-defense and his legal counsel at the time advised him to accept the plea bargain, specifically spelling out the justification for his advice. When asked by the judge if he understood, Petitioner asserted he did understand what the plea agreement meant. The above series of events satisfies the voluntary and intelligent requirements of *Hill*.

The Supreme Court shed light upon "a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered." *Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 742 (2011). As Petitioner clearly reassessed his plea agreement after receiving advice from a judge, he still "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372, 130 1473, 1485 (2010). Petitioner has done little more than assert self-defense. Further, Petitioner did not explain to the trial court how proceeding to slash the inmate who initiated the assault, after Petitioner successfully disarmed him, was within the realm of self-defense. Petitioner's counsel's August 26, 2010, letter to the state judge remarked that slashing the inmate was to gain respect, not self-defense. State Court Record 117 ("Having successfully defended himself, this later assault was intended to send a message to other inmates."). Petitioner's claim that his plea was involuntary is not supported by the evidence as it exists at this time.

## CONCLUSION

For the reasons stated above, Petitioner's application for assignment of *pro bono* counsel, ECF No. 9, is denied. Petitioner must move forward with this case either by obtaining counsel on his own, or by representing himself. Petitioner shall have until January 29, 2016, to reply to Respondent's memorandum in opposition, and to identify any further evidence necessary for the Court to consider before rendering judgment on his petition.

DATED:     December 15, 2015
           Rochester, New York

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge