UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NEFTALI PEREZ,

                              Petitioner,

         -vs-

CHRISTOPHER MILLER,

                              Respondent.

**No. 6:14-cv-06223-MAT**
**DECISION AND ORDER**

---

## I.   Introduction

Pro se petitioner Neftali Perez ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being detained in Respondent's custody in violation of his Federal constitutional rights. Petitioner is incarcerated as the result of a judgment of conviction entered against him on October 8, 2010, in New York State Supreme Court, Chemung County (Hayden, J.), following his guilty plea to one count of Assault in the First Degree (N.Y. Penal Law ("P.L.") § 120.10(1)).

## II.  Factual Background and Procedural History

The conviction here at issue stems from Petitioner's involvement in an altercation on April 23, 2010, with Ariel Echevarria-Perez ("Echevarria"), a fellow inmate at Elmira Correctional Facility, after Echevarria allegedly "disrespected" Petitioner. Echeverria attacked Petitioner with a shank (here, a

-1-

9½-inch-long sharpened piece of metal), but Petitioner subsequently gained control of the shank. Petitioner then assaulted Echeverria with the shank, causing a stab wound to the right side of Echeverria's chest as well as multiple lacerations to his head and left wrist. Echeverria suffered transections of the left radial and ulnar arteries which resulted in profuse bleeding and required emergency surgery.

On May 27, 2010, a Chemung County grand jury returned an indictment charging Petitioner with Attempted Murder in the Second Degree (P.L. §§ 110.00/125.25(1)); Assault in the First Degree (P.L. § 120.10(1)); Assault in the Second Degree (P.L. § 120.05(7)); and three counts of Promoting Prison Contraband in the First Degree (P.L. § 205.25(2)).

On August 16, 2010, the Chemung County District Attorney's Office offered Petitioner the opportunity to plead guilty to first-degree assault in full satisfaction of the indictment, in exchange for Petitioner's acceptance of a maximum determinate sentence of 15 years in prison plus 5 years of post-release supervision.

The Chemung County Public Defender, who was representing Petitioner, sent a letter dated August 26, 2010, to Judge Hayden stating that he had "spoken at length with [Petitioner]," who "wishes to accept the plea bargain offer." (SR.117-18). Trial counsel's letter also "advise[d] the Court and the People of what

[trial counsel] expect[ed] to be the general substance of [Petitioner's] allocution in advance of the plea[,]" namely, that the victim

> was the initial aggressor, attacking [Petitioner] with a sharpened metal object. [Petitioner] was, at first, acting in self-defense. There came a point, however, that [Petitioner] was able to take the metal object away from Echeverria, and had injured and subdued him to the extent that he no longer posed a threat. At that point, [Petitioner] engaged in a new assault, using the deadly weapon/dangerous instrument with the intent to cause serious physical injury to Mr. Echeverria. Having successfully defended himself, this later assault was intended to send a message to other inmates.

(SR.117).

On August 27, 2010, Petitioner appeared with Defense Counsel before Judge Hayden. The proceedings were translated for Petitioner by a sworn Spanish interpreter.  When asked to explain what it was that he had done that caused him to want to plead guilty, Petitioner explained, through the interpreter as follows:

> I was coming out of my work, I went to my cell, and I came out to get a cup of coffee. But the other individual came out of his cell to go to work, but he attacks me with a knife, wounding me here in my hands. And so, I came and I took it away from him. And the circumstances are, that led me to then attack him, because he had attacked me first.

> And I told the superintendent when I had my hearing that I was going to declare myself guilty, because I did it, but I took the knife away from him. The knife was his, and I attacked him with it.

> . . .

Judge Hayden inquired further of Petitioner regarding the circumstances of the assault:

THE COURT:    Where did–did you strike him with the knife?

THE DEFENDANT: And when the guards came, and they told me to let him go. I dropped it on the floor, the knife on the floor, because the guards hadn't been there, they didn't see it when he attacked me.

THE COURT: That was not my question. Did you strike the other person with the knife?

THE DEFENDANT: With the same knife, his knife.

THE COURT: Where did you strike him?

THE DEFENDANT: Up here, (indicating), around the neck.

THE COURT: And when you struck him with the knife, did you cut him?

THE DEFENDANT: Yes, I did, I cut him.
. . .

THE COURT: At the time you struck him with the knife, did he have any kind of weapon in his hands?

THE DEFENDANT: No, he didn't. He was trying to get me, but I was getting him. He was punching at me, and I hit him with the knife.

Judge Hayden confirmed that Petitioner understood the rights he was giving up by pleading guilty, including the right to have a jury trial at which he could assert a defense of justification and testify on his own behalf.  After determining that Petitioner had "offered sufficient factors to justify the plea," and had "discussed the option of raising a claim of self-defense at trial," and was "choosing not to take that option," (SR.18), Judge Hayden accepted Petitioner's guilty plea.

Petitioner appeared for sentencing with his attorney on

-4-

October 8, 2010. Judge Hayden adjudicated petitioner a second violent felony offender based on his prior conviction for second-degree murder. (SR.21-23, 25). Judge Hayden balanced Petitioner's "extraordinary history of violence" against the incident involving Echevarria, "which may well have started out as an effort to defend [him]self, but then again, [his] actions went beyond what was necessary to defend [him]self. . . ." (SR.24-25). Judge Hayden then sentenced Petitioner to a determinate term of 12 years, which was 3 years less than the maximum possible under the plea agreement. The sentence was set to run consecutively to the sentence Petitioner presently was serving, and 5 years of mandatory post-release supervision also were imposed. (SR.25).

Represented by counsel, Petitioner pursued a direct appeal to the Appellate Division, Third Department, of New York State Supreme Court. On December 6, 2012, the Appellate Division unanimously affirmed the judgment of conviction. People v. Perez, 101 A.D.3d 1162 (3d Dep't 2012). Leave to appeal to the New York Court of Appeals was denied on February 6, 2013.

This timely habeas petition followed in which Petitioner raises the following grounds for relief: (1) the trial court erred in accepting the guilty plea because Petitioner continued to assert he acted in self- defense; and (2) trial counsel should not have advised Petitioner to plead guilty since Petitioner had a valid claim of self-defense.

Respondent has opposed the petition arguing that Petitioner's second claim is unexhausted and procedurally defaulted, that both claims are barred by an adequate and independent state ground, and both claims are without merit. Petitioner has not filed a reply. For the reasons discussed below, the Court finds that Petitioner's claims lack merit. Accordingly, a writ of habeas corpus will not issue.

## III.  Merits of the Petition

### A.   Trial Court Erred in Accepting Plea Despite Petitioner's Assertions of Acting in Self-Defense

As his first ground for relief, Petitioner states that during the plea colloquy, he "insisted that he took the weapon from the other person and defended himself and the court[,] despite knowing a self defense claim was presented[,] accepted a plea to assault charges knowing a viable self defense claim existed and such was error." Pet., p. 4. This claim is factually unsupported and legally without merit.

First, as set forth above in the Factual Background, the trial court "specifically questioned [Petitioner] about his right to raise the claim of self-defense and confirmed that [Petitioner] had already discussed a possible claim of self-defense with his counsel." People v. Perez, 101 A.D.3d at 1162-63. Second, the Court agrees with the Third Department that "[t]he record amply supports the conclusion that [Petitioner] fully understood the  nature of the charge and waived any claim of self-defense in exchange for the

favorable plea agreement[.]" <u>Id.</u> (citation omitted). In particular, Judge Hayden took care to ascertain that Petitioner knew he was giving up the right to assert a self-defense claim at trial:

> THE COURT: Has your lawyer explained to you that you have the right to raise a claim of self-defense at trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you telling me that you would rather take advantage of the plea bargain than risk going to trial?
>
> THE DEFENDANT: I am guilty, because I did hit him with the knife, I did stab him with the knife.
>
> THE COURT: That wasn't my question. Are you telling me that you would rather take advantage of the plea bargain offered to you than risk going to trial?
>
> THE DEFENDANT: Exactly.

(SR.14-18).

Moreover, "'due process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed. . . .'" <u>Panuccio v. Kelly</u>, 927 F.2d 106, 111 (2d Cir. 1991) (holding that habeas petitioner's "claim that his plea was invalid because neither his counsel nor the trial court informed him of the affirmative defense of intoxication is . . . without merit") (quoting <u>Mitchell v. Scully</u>, 746 F.2d 951, 956-57 (2d Cir. 1984), <u>cert. denied</u>, 470 U.S. 1056 (1985)). Thus, even assuming the trial court did not question Petitioner regarding his awareness of a potential justification

defense and his willingness to waive such a defense, Petitioner's
contentions regarding the alleged factual deficiencies in his plea
allocution do not amount to errors of Federal constitutional
magnitude. See, e.g., Ames v. New York State Div. of Parole, 772
F.2d 13, 15 (2d Cir. 1985) ("Assuming . . . that Ames was not
informed of the fake pistol affirmative defense, a defense that he
would have had to prove by a preponderance of the evidence, this
did not render his plea involuntary. We discern no constitutional
defect in the trial court's inquiry into whether there was a
factual basis for Ames's plea.") (internal and other citations
omitted). Habeas relief is accordingly not warranted.

**B.    Ineffective Assistance of Trial Counsel**

As his second ground for relief, Petitioner asserts that trial
counsel should not have advised him to plead guilty since he had a
valid claim of self-defense. Petitioner cites trial counsel's
letter to the court prior to the guilty plea stating, in effect,
"that the facts of the case should be bifurcated into two actions:
the assault began in self defense and the other inmate was subdued
and no longer a threat and a new assault started." Pet., p. 5.

"Defendants have a Sixth Amendment right to counsel, a right
that extends to the plea-bargaining process." Lafler v. Cooper, 132
S. Ct. 1376, 1384 (2012) (citations omitted). The Supreme Court has
held "the two-part Strickland v. Washington test applies to
challenges to guilty pleas based on ineffective assistance of

-8-

counsel." Id. (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler, 132 S. Ct. at 1384 (citations omitted).

"[W]hen a defendant has pled guilty on the advice of counsel and then challenges the plea on the ground that it was not voluntary and knowing because he was not apprised of an affirmative defense," evaluation of counsel's competency involves assessing "[t]he likelihood that an affirmative defense will be successful at trial . . . ." Panuccio, 927 F.2d at 111 (citing Mitchell, 746 F.2d at 957); see also Hill, 474 U.S. at 59 (explaining that Strickland's prejudice prong, as applied in the plea context, "will depend largely on whether the affirmative defense likely would have succeeded at trial"). Here, Petitioner has failed demonstrate there was any reasonable possibility, much less any reasonable probability, that the defense of justification would have succeeded at trial.

As a matter of New York State law, a person may, under certain conditions, use physical force upon another person when, and to the extent, he reasonably believes such force to be necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force by the other person. N.Y. PENAL LAW § 35.15(1). "[J]ustification is a complete defense to homicide, N.Y. PENAL LAW § 35.15," and "must be disproved by the government at

-9-

trial beyond a reasonable doubt, id. § 25.00." Tate v. Wood, 963 F.2d 20, 23 (2d Cir. 1992). Where the defendant seeking to invoke the justification defense uses deadly force, his conduct is not justified unless he "reasonably believes that [the] other person *is using or about to use* deadly physical force." N.Y. PENAL LAW § 35.15(2) (emphasis supplied).

Here, Petitioner's statements during the plea colloquy establish conclusively that he did not have a reasonable belief that, when he inflicted life-threatening injuries with the shank on the victim, the victim was using or about to use deadly physical force: By that point, Petitioner had already taken the shank away from him, leaving the victim unarmed. Petitioner stated told the trial court, for example, "I took the knife away from him. The knife was his, and I attacked him with it." The trial court specifically asked Petitioner whether, at the time he "struck [the victim] with the knife, did [the victim] have any kind of weapon in his hands?" Petitioner responded, "No, he didn't. He was trying to get me, but I was getting him. He was punching at me, and I hit him with the knife." Thus, in the present case, once Petitioner gained control of the shank, the factual basis for a justification defense evaporated. See, e.g., Bryant v. Fischer, No. 05 Civ. 0437, 2005 WL 3418282, at *19 n.31 (S.D.N.Y. Dec. 14, 2005) ("Even if this Court were to give credit to a factual scenario where Sellers attacked Bryant with the razor, Bryant wrested the razor away from Sellers,

and Bryant slashed Sellers' neck in self-defense . . . , a justification charge would not be warranted. . . . If Bryant was able to wrest the razor away from Sellers, Sellers was no longer using deadly force and Bryant would no longer need to defend himself from deadly force."). Even assuming that Echevarria was punching or attempting to punch Petitioner at the time Petitioner stabbed him, punching does not constitute "deadly physical force," and thus Petitioner could not reasonably believe that Echevarria was using or about to use deadly physical force against him. See, e.g., Morales v. Jones, 86 Civ. 7799, 1988 WL 90379, at *2 (S.D.N.Y. July 26, 1988) ("Even if the [trial] court accepted petitioner's claim that [the victim] lunged at petitioner after petitioner gained control of the knife, the court could have concluded that petitioner's use of deadly force was not justified. The fact remains that petitioner was, at that point, armed, and the victim was not."). Accordingly, the fact that the victim in this case was the initial aggressor was not decisive of the issue of Petitioner's justified use of deadly physical force at the time of the stabbing; the shank no longer was in the victim's possession at the time of the stabbing and, moreover, the victim was unarmed and incapable of using deadly physical force. See, e.g., People v. Hayes, 17 N.Y.3d 46, 54 (2011) ("[A]t a certain point . . . , defendant came into possession of a knife and [the victim] was unarmed. . . . Even accounting for the claim that [the victim]

-11-

continued to struggle with, and swing at defendant, [the victim] was no longer capable of using deadly physical force against defendant."). On these facts, there is no reasonable possibility that Petitioner would have been able to convince a jury of multiple necessary elements of the justification defense. Therefore, he cannot demonstrate prejudice. For substantially the same reasons, the Court finds that Petitioner has not established the counsel was professionally unreasonable in advising Petitioner to forego a trial. See, e.g., Miller v. Graham, No. 10-CV-2174 JG, 2010 WL 5056315, at *6 (E.D.N.Y. Dec. 6, 2010) (finding that counsel was not unreasonable in deciding to forego a justification defense and recommend that petitioner plead guilty; "counsel might have further concluded that even if Miller persuaded the jury that Jones was the aggressor, it would nevertheless have convicted Miller on the ground that he had a duty to retreat before using deadly force and knew he could do so with complete safety. . . .").

According to Petitioner, trial counsel's "actions [were] contrary to his claim of self defense." Pet., p. 5. However, as discussed at length above, Petitioner's own actions were contrary to his claim of self-defense and had the effect of severely limiting trial counsel's options for representing him. Trial counsel, presented with a virtually un-winnable case, secured a favorable plea agreement for his client and provided competent representation.

**IV.  Conclusion**

For the reasons stated above, Petitioner's request for a writ of habeas corpus is denied, and the petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253.

**SO ORDERED.**

**s/ Michael A. Telesca**

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     May 16, 2016
           Rochester, New York.

-13-